IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| DODOTS LICENSING SOLUTIONS LLC,<br><br>    **Plaintiff,**<br><br>vs.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC., BEST BUY STORES, L.P.,<br>BESTBUY.COM, LLC, and BEST BUY<br>TEXAS.COM, LLC,<br><br>    **Defendants.** | **Case No. 6:22-cv-00535-ADA-DTG**<br><br>**Jury Trial Demanded** |

**PLAINTIFF DODOTS LICENSING SOLUTIONS LLC'S RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO SEVER AND STAY
CLAIMS AGAINST BEST BUY UNDER THE CUSTOMER-SUIT EXCEPTION**

## TABLE OF CONTENTS

Page

I. Argument ............................................................................................................................1

    A. The Customer-Suit Exception does not apply to a single action where there are no grounds for a separate action against Best Buy. ...................................1

    B. The Customer-Suit Exception does not apply to a single action alleging that the customer directly infringes and the manufacturer indirectly infringes .......3

    C. Severing and staying the action against Best Buy would delay and complicate the action and prejudice DoDots ...........................................................5

II. Conclusion ..........................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blue Gentian, LLC v. Telebrands Corp*,
    2014 U.S. Dist. LEXIS 194573 (D.N.J. April 30, 2014) ............................................................3

*Cal. Inst. Of Tech. v. Broadcom Ltd.*,
    2019 U.S. Dist. LEXIS 231027 (C.D.Ca 2019) ...................................................................4, 5

*In re Dell Inc.*,
    600 Fed. Appx. 728 (Fed. Cir. 2015) ...........................................................................1, 2, 3, 5

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
    2016 U.S. Dist. LEXIS 55205 (E.D. Tex. April 26, 2016) ............................................. *passim*

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011) .................................................................................................................4

*Katz v. Lear Siegler, Inc.*,
    909 F.2d 1459 (Fed. Cir. 1990) ................................................................................................1

*Nikken, USA, Inc. v. Robinsons-May, Inc.*,
    2003 WL 21781149 (C.D. Cal. July 8, 2003) ..........................................................................5

*In re Nintendo of Am., Inc.*,
    756 F.3d 1363 (Fed. Cir. 2014) .......................................................................................1, 2, 3

*Shockley v. Arcan*,
    248 F.3d 1349 (Fed. Cir. 2001) ............................................................................................5, 6

*Unilin Beheer B.V. v. Tropical Flooring*,
    2014 WL 2795360 (C.D. Cal. June 13, 2014) .........................................................................5

**Statutes**

35 U.S.C. § 284 ...............................................................................................................................5

Plaintiff DoDots Licensing Solutions LLC ("DoDots") submits this brief in opposition to Defendants' motion to sever and stay the claims under the customer-suit exception against the Best Buy Defendants.

**I.     Argument.**

As explained below, the Court should deny Defendants' motion because the customer-suit exception, and the principles thereunder, do not apply to either (1) a single action against a customer and manufacturer where there is not, nor should there be, a separate action against the customer. *See In re Dell Inc.*, 600 Fed. Appx. 728, 730 (Fed. Cir. 2015); or (2) a single action alleging direct infringement against the customer, and indirect infringement against the manufacturer. *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 2016 U.S. Dist. LEXIS 55205 (E.D. Tex. April 26, 2016) (distinguishing *Nintendo*). This motion should also be denied because severing and staying the action against the Best Buy Defendants would unnecessarily complicate the case and prejudice DoDots.

**A.     The Customer-Suit Exception does not apply to a single action where there are no grounds for a separate action against Best Buy.**

The customer-suit exception typically applies where a patentee files a lawsuit against a customer of an accused product, after which the manufacturer of the product files a declaratory judgment action against the patentee in a different forum. *See, e.g.*, *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1454 (Fed. Cir. 1990). The customer-suit exception may also apply where the patentee sues the manufacturer and customer in the same action, but the manufacturer defendant then moves to sever and stay the action against the customer and transfer the action to a forum that the manufacturer prefers.[1] *See, e.g.*, *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1365 (Fed.

---

[1] Here, Samsung's instant motion is simply a tactical prelude to a transfer-of-venue motion to the Northern District of California. But having Best Buy as defendants in this case prevents

1

Cir. 2014). Though not applicable here, Courts have given priority to the manufacturer action, and stayed the separate customer action, under both of these circumstances, on the theory that the manufacturer is the "true defendant" and the customer is merely a "peripheral" defendant. *See UroPep*, 2016 U.S. Dist. LEXIS 55205 at *6. By giving priority to the manufacturer action over the customer action, courts avoid active parallel and duplicative proceedings on the same issues. *Dell*, 600 Fed. Appx. at 730.

But the customer-suit exception does not apply to a single action against both the customer and manufacturer where there is no basis for a separate action against the customer because under those circumstances there is no risk of duplicative litigation. In *Dell*, the Federal Circuit explained:

> [W]e are aware of [no case] that sets forth the proposition that a district court must stay proceedings against a customer in the very same litigation that will, regardless of the requested stay, go forward against the supplier. The appellate cases [that Petitioners] cite all involve giving priority to supplier litigation over **what already is or should be separate litigation with customers**, thereby preventing parallel, active, duplicative proceedings. *Id*. (distinguishing *Nintendo*).

600 Fed. Appx. at 730.[2]

In *Dell*, the Federal Circuit found, contrary to Defendants' primary argument in this motion, that *Nintendo* does not require a district court to stay an action against a customer in the very same litigation as the manufacturer where there is no separate litigation against the customer. *Id*.

---

Samsung from filing such a motion because venue is not proper against Best Buy in Northern California.

[2] Unless indicated otherwise, all emphasis is added.

2

Here, like the plaintiff in *Dell*, DoDots brought a single action of infringement against the Samsung and Best Buy Defendants. The Defendants cannot argue lack of personal jurisdiction or improper venue in this district. The Defendants do not dispute joinder, nor do they seek to transfer the action to another forum. Indeed, this Court is the proper forum because Best Buy, the customer in this case, is located in this district and purchases the accused Samsung devices from Samsung in this district. Thus, there is no requirement for a separate action against Best Buy. Accordingly, there is absolutely no risk of "parallel, active, duplicative proceedings," which is the primary reason for applying the customer suit exception. In fact, the risk of "parallel, active, duplicative proceedings" is eliminated and judicial efficiency promoted because both the Samsung Defendants and the Best Buy Defendants are being represented by the same counsel. *See Blue Gentian, LLC v. Telebrands Corp*, 2014 U.S. Dist. LEXIS 194573, *13 (D.N.J. April 30, 2014) (holding that judicial efficiency is promoted and the supplier's interests are protected because the supplier and customer defendants were represented by same counsel). Accordingly, as in *Dell*, *Nintendo* does not apply here, and the Samsung Defendants' motion should be denied.

      **B.**    **The Customer-Suit Exception does not apply to a single action alleging that the customer directly infringes and the manufacturer indirectly infringes.**

The customer-suit exception also does not apply where the patentee alleges the customer is the direct infringer and the manufacturer is an indirect infringer. *See, e.g., UroPep*, 2016 U.S. Dist. LEXIS 55205 (E.D. Tex. April 26, 2016). Under those circumstances, the issue of infringement is not (as Samsung argues) duplicative to the customer and the manufacturer because proof of indirect infringement of the manufacturer would not necessarily establish direct infringement by the customer. *Id*. Moreover, a manufacturer charged with indirect infringement, as Samsung is here, cannot be held liable unless the patentee proves that the customer actually engaged in direct infringement with respect to the acts of inducement committed by the

3

manufacturer. *Id*. at *4. In *UroPep*, Federal Circuit Judge Bryson, sitting by assignment in the Eastern District of Texas, found that the customer-suit exception did not apply to cases where the "manufacturers . . . are indirect infringers and customers . . . are direct infringers." *Id*. at *10.

Here, DoDots' allegations against Best Buy defendants are that they, as the customer, directly infringe by *inter alia* offering to sell and selling the Accused Samsung Devices. *See* First Amended Complaint, DI 29 at ¶¶ 108-111, 140, 146. Samsung, the manufacturer, on the other hand, is accused of (along with directly infringing) indirectly infringing under § 271(b) by inducing Best Buy to sell the Accused Samsung Devices. Like in *UroPep*, the infringement issues relating to Samsung and Best Buy are not common and those issues would not be resolved in an action solely against Samsung. Thus, if the case were stayed against Best Buy, and DoDots is successful against Samsung on its indirect infringement claim, DoDots will still have to prove direct infringement and damages by Best Buy in a second separate action. *See Cal. Inst. Of Tech. v. Broadcom Ltd.*, 2019 U.S. Dist. LEXIS 231027, *26-27 (C.D.Ca 2019) (holding that despite Apple's assertion that it would be bound by non-infringement and invalidity determinations reached in a trial against only Broadcom, "the possibility of two trials on this subject matter instead of one (even if the second might only relate to damages disputes and tangential issues) does not appear likely to advance concerns of judicial economy in this case."); *see also Glob.-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 770 (2011) (Affirming a jury decision finding defendant liable for inducing sales of infringing product by a downstream seller and noting that "the jury could have easily found that before April 1998 Pentalpha willfully blinded itself to the infringing nature of the sales it encouraged Sunbeam to make."). DoDots cannot establish Samsung's liability for inducement, without first proving that Best Buy committed the specific acts that Samsung induced. Best Buy's liability for direct infringement is a predicate to

4

Samsung's liability for inducement. Thus, like in *UroPep* and *Broadcom*, the customer-suit exception does not apply, and Samsung's motion should be denied.

      **C.**      **Severing and staying the action against Best Buy would delay and complicate the action and prejudice DoDots.**

It is axiomatic that the Court retains full discretion to manage its cases and docket. *In re Dell Inc.*, 600 Fed. Appx. at 730. "'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Unilin Beheer B.V. v. Tropical Flooring*, 2014 U.S. Dist. LEXIS 85955 at *19 (C.D. Cal. June 13, 2014) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). Courts generally consider three factors in deciding a motion to stay: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Id*. (citing *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F.Supp.2d 1028, 1030–31 (C.D. Cal. 2013)). Here, at least factors two and three weigh against granting a stay.

A stay would complicate issues in the case and at trial. In addition to the direct and indirect infringement issues discussed above, a stay would also complicate and unduly prejudice DoDots' damages case.

Under the Patent Act, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty ......." 35 U.S.C. § 284. Parties that "make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale." *Shockley v. Arcan*, 248 F.3d 1349, 1364 (Fed. Cir. 2001). Though a party inducing infringement is jointly and severally liable for infringement with the direct infringer, *Nikken, USA, Inc. v. Robinsons-May, Inc.*, 2003 U.S. Dist. LEXIS

5

29365 at *8 (C.D. Cal. July 8, 2003), an "[e]ntry of judgment against one infringer does not automatically release other related infringers" if there is only one recovery. *Shockley,* 248 F.3d at 1364. In fact, it is the patentee's "prerogative to structure its case as it chooses" including the parties from whom it obtains damages. *UroPep*, 2016 U.S. Dist. LEXIS 55205, *13.

Proving damages, including a reasonable royalty under *Georgia-Pacific*, requires information from customer defendants regarding their sales and profits. Here, Best Buy is the primary source of this information. DoDots has the burden of proving damages at trial, and thus is entitled to discover any information that would assist it in doing so, including specific data from Best Buy concerning its purchases from Samsung, and its sales and profits.

In that regard, Samsung notes DoDots' allegation that Samsung is "the sole supplier of all the Accused Samsung Devices." *See* D.I. 45 at 8-9. But Samsung's statement is deliberately coy and fails to meet the third customer-exception factor because nowhere in its brief does Samsung affirmatively state which Samsung entities supply the Accused Samsung Devices to Best Buy. It is worth noting that DoDots' complaint implicates Samsung Electronics Co., Ltd., the Samsung entity based in Korea, along with Samsung Electronics America, Inc., the Samsung entity based in the U.S. But, at the present stage of this case, DoDots does not have any information on which Samsung entity sells the Accused Samsung Devices to Best Buy. If this case were stayed against Best Buy, DoDots may be unable to obtain discovery regarding any sales made to Best Buy by the Samsung entity in Korea (or any other unnamed or unidentified Samsung entity that sells to Best Buy). This is because Samsung could try to argue that such discovery is irrelevant because those sales qualify as foreign sales for which Samsung damages are unavailable or it could argue that those sales are no longer implicated in a case where the Best Buy defendants are severed and stayed.

But a defendant cannot limit the discovery a plaintiff needs to prove its damages for each infringement from another jointly and severally liable defendant, especially when the theory or quantum of damages could be different between the manufacturer and customer. Thus, discovery on damages necessarily will include Best Buy, and would not be limited to Samsung alone.

In that regard, Best Buy is a publicly-traded company that has its own revenue and profit margins. On page eight of Best Buy's 2017 10-K Statement filed with the SEC (the relevant pages of which are attached as Exhibit 1), Best Buy notes, "[i]n fiscal 2017, our 20 largest suppliers accounted for approximately 77% of the merchandise we purchased (75% in fiscal 2016), with 5 suppliers – Apple, Samsung, Sony, Hewlett-Packard, and LG Electronics – representing approximately 53% of total merchandise purchased (51% in fiscal 2016)." The 10-K further notes, "[o]ur profitability depends on us securing acceptable terms with our vendors for, among other things, the price of merchandise we purchase from them, funding for various forms of promotional programs, payment terms, allocations of merchandise, development of compelling assortments of products, operation of vendor-focused shopping experiences within our stores and terms covering returns and factory warranties." *Id*. Based on such admissions and to support its damages case against Best Buy, DoDots should be allowed to *inter alia* obtain information from Best Buy about (1) its agreement with Samsung; (2) the "funding" for any "promotional programs" it runs for Samsung; and (3) costs and benefits associated with its "operation of vendor-focused [Samsung] shopping experiences within" its stores. And Best Buy's Samsung-focused "shopping experiences" would lead to Best Buy's use and sale of the Accused Samsung Devices.

Second, DoDots would be prejudiced by a stay, specifically at trial. If the action against Best Buy were stayed, DoDots would be forced to proceed against Samsung for indirect

infringement without charging any party with direct infringement. Under the same circumstances, the *UroPep* court stated,

> While UroPep could maintain its action against Lilly without adding a particular direct infringer as a party-defendant, requiring UroPep to alter its theory of the case by selecting a new co-defendant, or proving direct infringement by other parties not previously part of UroPep's theory of the case, would impose a substantial burden on UroPep. In the direct/indirect infringement setting, that burden would be far greater than it would be in the typical customer-suit case in which the action against the manufacturer can proceed in exactly the same manner, whether the action against the manufacturer's retailer or retailers is severed or not.

*UroPep*, 2016 U.S. Dist. LEXIS 55205, *14.

Requiring DoDots to prove Samsung's indirect infringement by inducement without the party it induced imposes a substantial burden and prejudicial disadvantage on DoDots at trial.

## II. Conclusion.

For the foregoing reasons, DoDots respectfully requests the Court to (i) deny the Samsung Defendants' Motion to Sever and Stay, and (ii) grant any such other and further relief as the Court deems appropriate.

Dated: November 14, 2022

Respectfully submitted,

*/s/ Raymond W. Mort, III*
Raymond W. Mort, III
Texas State Bar No. 00791308
raymort@austinlaw.com
**THE MORT LAW FIRM, PLLC**
501 Congress Ave, Suite 150
Austin, Texas 78701
Tel/Fax: (512) 865-7950

*Of Counsel:*
Ronald M. Daignault (*pro hac vice*)*
Chandran B. Iyer (*pro hac vice*)
Shalu Maheshwari (*pro hac vice*)*
Richard Juang (*pro hac vice*)*

8

> Oded Burger (*pro hac vice*)*
> Zachary H. Ellis (State Bar No. 24122606)*
> rdaignault@daignaultiyer.com
> cbiyer@daignaultiyer.com
> smaheshwari@daignaultiyer.com
> rjuang@daignaultiyer.com
> oburger@daignaultiyer.com
> zellis@daignaultiyer.com
> **DAIGNAULT IYER LLP**
> 8618 Westwood Center Drive - Suite 150
> Vienna, VA 22102
> **Not admitted in Virginia*
>
>
> Attorneys for Plaintiff

9

# EXHIBIT 1

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# FORM 10-K

(Mark One)

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended January 28, 2017

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission file number **1-9595**

## BEST BUY CO., INC.
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **Minnesota** | **41-0907483** |
| State or other jurisdiction of incorporation or organization | (I.R.S. Employer Identification No.) |
| **7601 Penn Avenue South** | **55423** |
| **Richfield, Minnesota** | (Zip Code) |
| (Address of principal executive offices) | |

Registrant's telephone number, including area code 612-291-1000

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, par value $.10 per share | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act: **None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. ☒ Yes ☐ No

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act. ☐ Yes ☒ No

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. ☒ Yes ☐ No

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate website, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files). ☒ Yes ☐ No

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act. (Check one):

Large accelerated filer ☒     Accelerated filer ☐     Non-accelerated filer ☐     Smaller reporting company ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act) ☐ Yes ☒ No

The aggregate market value of the voting and non-voting common equity held by non-affiliates of the registrant as of July 29, 2016, was approximately $7.8 billion, computed by reference to the price of $33.60 per share, the price at which the common equity was last sold on July 29, 2016, as reported on the New York Stock Exchange-Composite Index. (For purposes of this calculation all of the registrant's directors and executive officers are deemed affiliates of the registrant.)

As of March 20, 2017, the registrant had 309,110,840 shares of its Common Stock issued and outstanding.

In general, consumer electronics product life cycles (which begin with initial market launch and conclude with maturity or obsolescence) have become shorter and less predictable. This is largely due to rapid technological advancement and innovation and generally faster adoption by consumers. Consumer preferences have also become susceptible to rapid change, and this adds to the unpredictability of our business. These factors affect us in a number of ways, for example:

- the emergence of new products and categories (for example, virtual reality);
- the rapid maturity and decline of relatively new categories (for example, tablets);
- cannibalization of categories (for example, the effect of smart phones on demand for GPS, mobile audio, digital imaging devices, etc.);
- intense consumer interest in high-profile product updates (for example, smartphone model updates) which concentrates purchasing activity around new launch dates and can often lead to shortages of merchandise;
- unpredictable consumer adoption rates (for example, contrasting adoption rates of 3D and Ultra-HD televisions);
- rapidly declining price-points in many categories (for example, digital imaging, Ultra-HD televisions, etc.); and
- availability of content (for example, Ultra-HD programming, online streaming services, sporting events or other broadcast programming).

The effects of these factors can also be exacerbated by the competitive environment and the ease with which customers can research and compare product features and price. If we fail to interpret, predict and react to these factors in a timely and effective manner, the consequences can include:

- not offering the products and services that our customers want;
- having excess inventory, which may require heavy discounting or liquidation;
- not securing adequate access to brands or products for which consumer demand exceeds supply;
- delays in adapting our merchandising, marketing or supply chain capabilities to accommodate changes in product trends; and
- damage to our brand and reputation.

These and other similar factors could have a material adverse impact on our revenues and profitability.

**Our reliance on key vendors and mobile network carriers subjects us to various risks and uncertainties which could affect our revenue and profitability.**

We source the products we sell from a wide variety of domestic and international vendors. In fiscal 2017, our 20 largest suppliers accounted for approximately 77% of the merchandise we purchased (75% in fiscal 2016), with 5 suppliers – Apple, Samsung, Sony, Hewlett-Packard, and LG Electronics – representing approximately 53% of total merchandise purchased (51% in fiscal 2016). We generally do not have long-term written contracts with our vendors that would require them to continue supplying us with merchandise. Our profitability depends on us securing acceptable terms with our vendors for, among other things, the price of merchandise we purchase from them, funding for various forms of promotional programs, payment terms, allocations of merchandise, development of compelling assortments of products, operation of vendor-focused shopping experiences within our stores and terms covering returns and factory warranties. To varying degrees, our vendors may be able to leverage their competitive advantages -- for example, their financial strength, the strength of their brand with customers, their own stores or online channels or their relationships with other retailers -- to our commercial disadvantage. The potential adverse impact of these factors can be amplified by price transparency (which can limit our flexibility to modify selling prices) and a highly competitive retail environment. Generally, our ability to negotiate favorable terms with our vendors is more difficult with vendors where our purchases represent a smaller proportion of their total revenues, consequently impacting our profitability from such vendor relationships.

We are also dependent on a relatively small number of mobile carriers to allow us to offer mobile devices with carrier connections. The competitive strategies utilized by mobile network carriers can have a material impact on our business. For example, if carriers change the structure of customer contracts, customer upgrade terms, customer qualification requirements, monthly fee plans, cancellation fees or service levels, the volume of upgrades and new contracts we sign with customers may be reduced, adversely affecting our revenues and profitability. In addition, our carriers also may serve customers through their own stores, websites, mobile applications and call centers or through other competing retail channels. Carriers may decide to cease allowing us to offer their contracts or certain categories of their contracts, focus their marketing efforts on alternative channels or make unfavorable changes to our commissions or other terms. Each of these factors could have a materially adverse impact on our revenue and profitability.

We have internal standards that we require all of our vendors to meet. Our ability to find qualified vendors who can supply products in a timely and efficient manner that meet our standards of quality and safety can be difficult, especially with respect

8